IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:07CV310-02-V
(3:04CR160-1-V)

| | | |
|---|---|---|
| EUGENE BERNARD MOSS, | ) | |
|     Petitioner, | ) | |
| | ) | |
|         v. | ) | **O R D E R** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|     Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before this Court upon an initial review of the petitioner's "Motion To Vacate, Set Aside, Or Correct Sentence" under 28 U.S.C. §2255 and supporting documents, all filed August 2, 2007. For the reasons stated herein, the petitioner's Motion to Vacate will be summarily <u>denied</u> and <u>dismissed</u>.

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Pertinent to this Motion, the record reflects that on June 29, 2004, a Bill of Indictment was filed, charging the petitioner with having been a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §922(g)(1). Although the petitioner initially entered a plea of "not guilty" to that charge, he later appeared before the Court and tendered a "straight-up" guilty plea to the charge.

More particularly, on September 2, 2004, the petitioner appeared before the Court for his Plea & Rule 11 Hearing.  On that occasion, the Court engaged the petitioner in its standard, lengthy colloquy to ensure that his guilty plea was being intelligently and voluntarily tendered.  After placing the petitioner under oath and hearing his answers to all of its questions, the Court determined that the petitioner's guilty plea was knowingly and freely made.  At the conclusion of that proceeding, the petitioner and his attorney signed the "Entry and Acceptance of Guilty Plea . . ." form, and the Court conditionally accepted the guilty plea.

Next, on April 12, 2005, the Court held the petitioner's Factual Basis & Sentencing Hearing.  At the beginning of that Hearing, the petitioner reaffirmed that he had freely and voluntarily made his guilty plea on September 2, 2004; that he believed that he had understood the nature and consequence of the charge, and the penalties which he was facing; and that he believed that he had been suitably advised and represented by counsel.  The petitioner also reaffirmed that he, in fact, was guilty of the subject firearms offense.  Thus, after hearing those affirmations, and noting the petitioner's stipulation to the existence of a factual basis as established by the Pre-Sentence Report, the Court found that the petitioner's guilty plea was proper, and it unconditionally accepted the same.

Thereafter, the Court entertained defense counsel's objections to the Pre-Sentence Report.  Relevant here, counsel argued that there were no facts or factors which could be used to increase the petitioner's exposure beyond where it was on the basis of the facts which he had admitted by virtue of his guilty plea. Defense counsel further argued that one of the petitioner's juvenile adjudications should not be used to calculate his criminal history due to his age and the nature of adjudicative proceedings.  Counsel contended that if included in the calculations, the petitioner's criminal history score would overstate the seriousness of his past criminal activity.  However, the Court overruled counsel's objections, finding that the advisory range of imprisonment (92 to 115 months) properly had been calculated on the basis of findings that the petitioner's Total Offense Level was 23, and his Criminal History Category was IV.

Next, defense counsel stressed to the Court the advisory nature of the U.S. Sentencing Guidelines, and pointed to several matters which the Court should consider in crafting the petitioner's sentence, including his unfortunate family history, his lack of a meaningful education and his history of substance abuse. The petitioner then apologized to the Court for his conduct, and stated that he was ready to take responsibility for such conduct.

For its part, the government asked the Court to consider a sentence toward the upper end of the advisory range, based upon

both the petitioner's criminal history and the specific conduct
involved in the instant offense.  Specifically, the government
noted that one of the petitioner's common law robbery convictions
actually was a car jacking offense; and that the instant offense
had involved the petitioner's conduct of putting people in danger
by his attempt to flee at the time of his arrest.

After considering all of the above, the Court noted that the
petitioner's criminal history was "well-developed" in the pages
of the Pre-Sentence Report, and that his history revealed that
the public's safety was a "strong factor" to be considered in
determining the sentence.  In light of all of the relevant
factors, the Court announced that a sentence at the high end of
the advisory range was justified.  The Court then imposed a term
of 115 months imprisonment.  The petitioner timely appealed to
the Fourth Circuit Court of Appeals.

On appeal, counsel for the petitioner argued that the peti-
tioner's sentence was imposed in violation of the rule announced
in United States v. Booker, 543 U.S. 220 (2005); and that this
Court had erred in assessing two criminal history points for the
unlawful concealment adjudication which the petitioner had su-
stained as a juvenile.  See United States v. Moss, No. 05-4505,
slip op. at 2 (4th Cir. May 17, 2006).  However, the appellate
Court rejected the petitioner's claim of a Booker error, instead
finding that this Court properly had both treated the Guidelines

4

as advisory and had used the preponderance of the evidence stan-
dard in making its sentencing determination.  Id.

The appellate Court also rejected the petitioner's other
claim concerning the inclusion of his juvenile adjudication.  Id.
Rather, the Court of Appeals determined that this Court's inclu-
sion of the juvenile adjudication was appropriate, since the
petitioner actually had been imprisoned for that offense due to
his violation of the probationary term which he initially had
received for it.  Id. at 2-3.

After the Court of Appeals issued its mandate, the peti-
tioner filed a Petition for a Writ of Certiorari in the U.S.
Supreme Court.  However, once the petitioner's Petition was
denied, he timely returned to this Court and filed the instant
Motion to Vacate under 28 U.S.C. §2255.

In this Petition, the petitioner argues that 18 U.S.C.
§922(g)(1) is "constitutionally repugnant and therefore absolute-
ly null and void" due to its abridgement of his right to bear
arms.  The petitioner also argues counsel was ineffective for his
failure to argue that Congress had failed to give him proper no-
tice of the subject offense and the punishment he could face for
his conduct.  He also argued that A.T.F. has no enforcement
authority for that offense.  The petitioner further argues that
counsel was ineffective for his failure to fully explain to the
trial Court that the juvenile adjudication which was the subject

of the appeal occurred "when he was 11 years old . . . [and] was nothing more than a shoplifting charge and thus was never sup-posed to be used to give points to his criminal history category score. . . " under the Guidelines.  Finally, the petitioner claims that counsel was ineffective for having raised on appeal claims which the petitioner already had waived the right to raise by virtue of his plea agreement with the government.

Notwithstanding his obvious beliefs to the contrary, how-ever, the Court has determined that the petitioner's claims are defeated by the underlying record, and the relevant precedent.

## II.  **ANALYSIS**

1. **This Court is authorized to promptly review and dismiss any §2255 motion which does not contain a claim that entitles the petitioner to relief**.

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . . " in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  In the event it is determined that the petitioner is not entitled to relief, the reviewing Court must dismiss the motion.

Following such directive, this Court has carefully reviewed the petitioner's Motion to Vacate and the pertinent record evidence.  As hereafter explained, such review clearly establish-

6

es that the petitioner is not entitled to relief on any of his claims.

### 2.   <u>Title 18 U.S.C. §922(g)(1) is valid and fully enforceable</u>.

By his first claim, the petitioner argues that §922(g)(1) violates his right to possess a firearm under the Second Amendment.  However, case law reveals that this claim is legally baseless.

In <u>United States v. Johnson</u>, 497 F.2d 548, 550 (4th Cir. 1974), the Court relied upon U.S. Supreme Court precedent, and held that the Second Amendment does not render §922(g) unconstitutional because that Amendment "only confers a collective right of keeping and bearing arms which must bear a reasonable relationship to the preservation or efficiency of a well-regulated militia" (internal quotation omitted), <u>citing</u> <u>United States v. Miller</u>, 307 U.S. 174, 178 (1939).

Subsequently, in <u>Lewis v. United States</u>, 445 U.S. 55, 65 n. 8 (1980), the Court stated that §922(g) does not violate the Second Amendment because such legislative restrictions do not "trench upon any constitutionally protected liberties."  <u>See also</u> <u>Love v. Pepersack</u>, 47 F.3d 120, 124 (4th Cir. 1995) (holding that the Second Amendment "does not confer an absolute individual right to bear any type of firearm.").  Accordingly, the Court finds that the petitioner's assertions of a Second Amendment violation must be rejected.

3.   **The petitioner's claims that counsel was
ineffective also must be flatly rejected**.

With respect to claims of ineffective assistance of counsel,
a petitioner must show that counsel's performance was constitu-
tionally deficient to the extent it fell below an objective
standard of reasonableness, <u>and</u> that he was prejudiced thereby.
<u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984).  In making
this determination, there is a strong presumption that counsel's
conduct was within the wide range of reasonable professional
assistance. <u>Id</u>. at 689; <u>see also</u> <u>Fields v. Attorney Gen. of Md.</u>,
956 F.2d 1290, 1297-99 (4th Cir.), <u>cert. denied</u>, 474 U.S. 865
(1985); <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir.
1983), <u>cert. denied</u>, 464 U.S. 1065 (1984); <u>and</u> <u>Marzullo v.
Maryland</u>, 561 F.2d 540 (4th Cir. 1977), <u>cert. denied</u>, 435 U.S.
1011 (1978).

Under these circumstances, the petitioner "bears the burden
of proving <u>Strickland</u> prejudice." <u>Fields</u>, 956 F.2d at 1297,
<u>citing</u> <u>Hutchins</u>, 724 F.2d at 1430-31.  If the petitioner fails to
meet this burden, a "reviewing court need not consider the per-
formance prong." <u>Fields</u>, 956 F.2d at 1290, <u>citing</u> <u>Strickland</u>,
466 U.S. at 697.

Moreover, in considering the prejudice prong of the analy-
sis, the Court must not grant relief solely because the
petitioner can show that, but for counsel's performance, the
outcome of the proceeding would have been different.  <u>Sexton v.</u>

<u>French</u>, 163 F.3d 874, 882 (4th Cir. 1998), <u>cert. denied</u>, 528 U.S. 855 (1999).  Rather, the Court "can only grant relief under . . . <u>Strickland</u> if the 'result of the proceeding was fundamentally unfair or unreliable.'" <u>Id.</u>, <u>quoting</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993).

Most importantly in this case, a petitioner who alleges ineffective assistance following entry of a guilty plea has an even <u>higher</u> burden to meet.  See <u>Hill v. Lockhart</u>, 474 U.S. at 53-59; <u>Fields</u>, 956 F.2d at 1294-99; <u>and</u> <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir.), <u>cert. denied</u>, 488 U.S. 843 (1988).  The Fourth Circuit described the petitioner's additional burden in a post-guilty plea claim of ineffective assistance of counsel as follows:

> When a [petitioner] challenges a conviction entered after a guilty plea, [the] "prejudice prong of the [Strickland] test is slightly modified.  Such a defendant must show that there is a reasonable probability that, but for counsel's errors, <u>he would not have pleaded guilty and would have insisted on going to trial</u>."

<u>Hooper</u>, 845 F.2d at 475 (emphasis added); <u>accord</u> <u>Hill v. Lockhart</u>, 474 U.S. at 59; <u>and</u> <u>Fields</u>, 956 F.2d at 1297.

At the outset of its analysis of the petitioner's claims against counsel, the Court notes that he does <u>not</u> assert or even suggest that but for counsel's alleged error, he would have pled "not guilty" and insisted on going to trial.  Therefore, it is not at all likely that the petitioner will be able to establish

the requisite prejudice for these claims in any event.

The Court will take up his claims out of turn.  The petitioner has alleged that counsel was ineffective for having raised on appeal matters which he already had waived the right to raise by virtue of his plea agreement.  However, a careful review of the record makes it clear that this claim is factually baseless.

That is, the record of the petitioner's criminal proceedings shows that he entered a "straight-up" guilty plea and there was no plea agreement, written or otherwise.  For instance, entry numbers 8 and 9 on the petitioner's criminal docket sheet note a "straight-up" guilty plea was made on September 2, 2004.  The record also includes the transcript from that Plea & Rule 11 Hearing, which document reflects defense counsel's confirmation that the petitioner was going forward with his "straight-up" guilty plea.  Also included in that record is the transcript of the petitioner's Factual Basis & Sentencing Hearing, during which defense counsel reported that the petitioner had "pled without a Plea Agreement."

In addition, the record includes a copy of the petitioner's Pre-Sentence Report which notes that he had "pled guilty to Count One of the Bill of Indictment, without a written Plea Agreement." Last, as if the foregoing were not enough, the Fourth Circuit's opinion puts this matter to rest inasmuch as it noted that the

petitioner had "pled guilty without a plea agreement to one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §922(g)(1)." <u>Moss</u>, No. 05-4505, slip op. at 2.

Although the petitioner has attempted to support his assertion of a written plea agreement by submitting a copy of a letter of enclosure for the proposed agreement which the government sent to defense counsel, the petitioner's reliance upon that document is misplaced.  To be sure, the subject letter simply reflects that, consistent with typical practice, the government extended a proposed written Plea Agreement to defense counsel. However, there is no evidence that the petitioner ever signed or otherwise accepted that plea offer.

Furthermore, and contrary to his contention, the document which the petitioner signed at the conclusion of his Plea hearing was not a plea agreement.  Instead, the record shows that the document which was signed by the petitioner and his attorney was an "Entry And Acceptance Of Guilty Plea . . . " form.  In sum, the record of this case makes it is clear that there was no plea agreement which precluded counsel from asserting the claims which he raised on direct appeal.

Similarly, the Court finds that the petitioner's claim that counsel was ineffective at sentencing--for failing fully to explain the nature of the juvenile adjudication which was included in his criminal history--is both factually and legally baseless.

In particular, the petitioner argues that counsel should have
explained that the subject unlawful concealment charge "was only,
in all actuality a shoplifting charge, in which he stole 2 packs
of cigars valued at $2.40, so that he could have cigars to sell
to older people . . . merely to obtain a little money, especially
considering how he came from a poor background."

However a review of the record reflects that the petition-
er's Pre-Sentence Report gave detailed information about the
subject adjudication.  In particular, the Report noted that while
he originally was charged with Larceny, the petitioner was allow-
ed to plead guilty to "unlawful concealment."  The Report further
explained that the offense had occurred when the petitioner was
11 years-old; and that the offense conduct consisted of the pe-
titioner's having stolen two packages of cigars valued at $2.40
from a food store.

The record further shows that defense counsel filed a writ-
ten objection to the Report's recommendation for a two-point
assessment for that adjudication.  By that objection, counsel
argued that assessing points for the offense overstated the
severity of the petitioner's criminal history, and ignored the
presumption that, as an 11 year-old, the petitioner could not
have formed the requisite intent to commit a crime.

Based upon the above information, the Court finds that all
but one of the matters to which the petitioner points were, in

fact, presented to the Court, even if not by counsel.  Thus, the
petitioner is mistaken in his ultimate suggestion that the Court
lacked the information it needed in order to make its determina-
tion.

Rather, the Court finds that it had before it all of the
relevant information which it needed in order to decide whether
the juvenile offense warranted the assessment of any criminal
history points under the Guidelines.  To put it another way, the
record shows that the petitioner's motive for the offense is the
only information which was not presented to the Court.  However,
since that information is entirely irrelevant to the question of
whether or not the conviction could be included in his criminal
history score, the petitioner cannot establish that he was pre-
judiced by counsel's failure to discuss his motive.

Nor can the Court find any basis to support the petitioner's
remaining claim that counsel was ineffective for failing to argue
that the petitioner could not be prosecuted under §922(g)(1) be-
cause Congress had failed to give notice in the Federal Register
that convicted felons could be subject to prosecution for their
subsequent possession of firearms.  Indeed, to the extent that
the petitioner is attempting to raise a notice and/or fair warn-
ing challenge to §922(g)(1), he cannot prevail.

First, the United States Supreme Court already has rejected
such a claim based upon the fundamental principle that ignorance

13

of the law simply is no excuse for its violation.  <u>Cheek v.</u> <u>United States</u>, 498 U.S. 192 (1991); <u>United States v. Bostic</u>, 168 F.3d 718 (4th Cir. 1999); <u>United States v. Langley</u>, 62 F.3d 602 (4th Cir. 1995) (<u>en banc</u>) (holding that proof that defendant knew he was violating §922(g)(1) is not required for prosecution nor is ignorance of the law a defense to such prosecution), <u>cert.</u> <u>denied</u>, 516 U.S. 1083 (1996).

Second, and equally significant, Federal Register notice requirements do not apply to federal criminal statutes.  <u>See</u> 44 U.S.C. §1505(a) (matters to be published in Federal Register); 5 U.S.C. §§551(1)(A)(Congress is excluded from definition of agency), 552 (material which agencies must publish).

Finally, contrary to the petitioner's assertion, the Bureau of Alcohol, Tobacco and Firearms does have the responsibility and authority to enforce 18 U.S.C. §922(g)(1).  <u>See</u> <u>Fraternal Order</u> <u>of Police v. United States</u>, 173 F.3d 898, 906 (D.C. Cir. 1999). Therefore, this claim is baseless.

## IV.  <u>CONCLUSION</u>

The Court's initial review of the petitioner's Motion to Vacate and the relevant record evidence conclusively shows that he is not entitled to relief on any of his claims.  Therefore, Rule 4(b) of the Rules Governing Section 2255 Proceedings requires this Court to <u>dismiss</u> the instant Motion to Vacate.

14

## V. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED t**hat the petitioner's Motion to Vacate is **DENIED and DISMISSED.**

**SO ORDERED.**

Signed: August 22, 2007

Richard L. Voorhees
United States District Judge

15